**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**RICKY WEAVER, as Personal
Representative of the Estate of
MICAH WEAVER, Deceased**                                             **PLAINTIFF**

**v.**                                    **No. 1:11-cv-025 KGB**

**TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES, U.S.A., INC.,
and TK HOLDINGS, INC.**                                              **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively the "Toyota Defendants"), filed a motion to exclude untimely disclosed evidence and alternative motion for continuance (Dkt. No. 60).  Plaintiff Ricky Weaver, as the personal representative of the estate of Micah Weaver, deceased, responded to the motion (Dkt. No. 66), and the Toyota Defendants replied (Dkt. No. 69).

**I.       Summary of the Parties' Positions**

On November 30, 2010, near Batesville, Arkansas, Micah Weaver was the driver and sole occupant of a 2000 Toyota 4Runner involved in a single-vehicle crash.  Micah Weaver allegedly lost control of the 4Runner causing it to rollover.  He was ejected and died in the crash.

The procedural history of this case is set out in the parties' filings.  Mr. Weaver requested, and received from the Court, several extensions of the deadline to disclose his expert witnesses, their opinions, and supporting materials.  In the last order extending his deadline, the Court cautioned Mr. Weaver that "no further extensions will be granted" (Dkt. No. 52).

The Toyota Defendants contend that, months after the court-ordered deadline, Mr. Weaver disclosed large amounts of new materials created by and relied on by his designated expert witnesses. They claim these materials "dramatically alter and far exceed the scope of Plaintiff's experts' original reports and disclosures, and relate to vehicle defect allegations not included in Plaintiff's live pleadings" (Dkt. No. 60, at 1). The Toyota Defendants also complain that the materials were produced only days prior to the experts' scheduled depositions. They ask the Court to strike the late disclosed evidence and to exclude any reference to the materials at trial, including any testimony or opinions from Mr. Weaver's experts regarding the materials. In the alternative, the Toyota Defendants ask the Court to continue the trial of this matter to permit them sufficient time to analyze and obtain full discovery of the new materials to prepare evidence to rebut it.

The Toyota Defendants primarily complain about (1) insufficient initial disclosures from Mr. Weaver's experts about an alleged defect in the driver's seatbelt buckle and (2) additional supporting and related expert witness materials belatedly produced, including but not limited to (a) rollover testing materials and (b) testing or demonstrations related to Mr. Weaver's claim of an unintended buckle release. The Court will examine arguments related to each of these in turn.

**(1)      Disclosures About An Alleged Defect In The Driver's Seatbelt Buckle**

The Toyota Defendants contend that any expert material related to an assertion that the vehicle's driver's seat belt system was defectively designed because of the potential for inadvertent unlatchment is not relevant. They contend that Mr. Weaver's live pleading, the Corrected Amended Complaint, does not contain an allegation that the vehicle's seat belt system was defective in any way (Dkt. No. 44-1). They maintain that, since Mr. Weaver has not alleged

that the subject vehicle's seat belt system was defective, any expert testimony or supporting materials purporting to support such an allegation are not relevant and should be excluded.

Mr. Weaver contends that his Corrected Amended Complaint includes the allegation that "the roll-over protective system was inadequately designed because it did not afford reasonable occupant protection during the foreseeable rollover crash," and that "occupant protection system" includes the seat belt (Dkt. 66, at 1).

With their challenge to the allegations in the Corrected Amended Complaint, the Toyota Defendants also challenge Mr. Weaver's initial expert reports.  They contend those reports contained only vague statements about an alleged defect with the driver's seatbelt buckle.  They claim little or no support for those statements was included, and no testing was disclosed to support a claim of defect in the buckle.

In response, Mr. Weaver points to specific passages in Dr. Jacquelyn Paver's initial expert report which he claims clearly detail her claims of seat belt defects (Dkt. 66, at 2).  Mr. Weaver also maintains that defense experts in their reports dedicated approximately four pages to defending against Dr. Paver's unwanted seat belt buckle release opinions (Dtk. 66, at 2) and addressed the opinions of Dr. Stephen Batzer as to enhanced protective glass defects (Dtk. 66, at 5).  Mr. Weaver has included the expert reports of defense experts Jeffrey J. Croteau and William W. Van Arsdell (Dkt. 66, Exhibits 7 and 4).  The Toyota Defendants disagree with Mr. Weaver's characterization of their experts' reports and claim their experts' reports in fact demonstrate the conclusory and vague nature of plaintiffs' experts' reports on this subject.

(2)     **Additional Supporting Materials**

The Toyota Defendants also challenge additional supporting and related expert witness materials belatedly produced by Mr. Weaver.   Based on the production of these materials, the

Toyota Defendants did not proceed with the depositions of Mr. Weaver's experts when previously scheduled.  Mr. Weaver maintains that the additional materials furnished (1) do not alter the original opinions of such experts stated in their expert reports, (2) are in part cumulative of materials previously produced, (3) were not necessary for the formulation of plaintiff's expert opinions stated in their initial expert reports, (4) are in part demonstrative aids which according to Mr. Weaver are not under court decisions necessary to be endorsed or provided with disclosures, (5) do not alter the prior opinions of plaintiff's experts or (6) are in part for impeachment, such as the 1997 Ford Explorer Demonstration (Dkt. 66, at 4).

The Toyota Defendants take exception to Mr. Weaver's representations.  They assert that most, if not all, of the materials Mr. Weaver claims were produced contemporaneously with plaintiff's expert reports in early November 2012 were not produced to defendants until January 7, 2013, approximately two months after the court-ordered deadline (Dkt. 69, at 2).  After further review of his file materials, Mr. Weaver's counsel acknowledges that the Toyota Defendants are correct in regard to the date these materials were first produced (Dkt. 70, at 1-2).  Although they take issue with all of the materials they claim have been belatedly produced, the Toyota Defendants single out two categories of materials in particular.

### (a) Rollover Testing Materials

As a part of his production, Mr. Weaver produced rollover testing materials related to a 1997 Ford Explorer Demonstration.   Mr. Weaver contends that the 1997 Ford Explorer Demonstration is relied upon by Dr. Paver as impeachment of the opinions of defense experts that, if Micah Weaver had been wearing his seat belt at the time of the subject accident, there would have been gross damage to the seat belt webbing which was not found on the seat belt webbing of the subject vehicle's seat belt (Dkt. 66, at 5).  Mr. Weaver maintains that "[t]he 1997

Ford Explorer demonstration demonstrates that claim by defense experts is patently untrue" (Dkt. 66, at 7).  Based on Mr. Weaver's explanation of this material, the Court understands that plaintiff's vehicle stability and handling expert, Robert Hooker, performed the demonstration on the 1997 Ford Explorer.   According to Mr. Weaver, Mr. Hooker did not reference the demonstration in his report initially produced in this case because he will not be testifying about it, unless the Court requires him to do so, and will offer no opinions based on it.  Instead, Mr. Weaver claims that he intends to have Dr. Paver testify about the demonstration and will attempt to show the demonstration to the jury during Dr. Paver's testimony but not admit it into evidence pursuant to Rule 803(18) of the Federal Rules of Evidence.  Mr. Weaver agrees to make Mr. Hooker available for the purpose of examining him relating to his performance of such 1997 Ford Explorer demonstration, if the Toyota Defendants desire to examine him on this.

### (b)      Testing or Demonstrations Related to Unintended Buckle Release

The Toyota Defendants also claim that they received from Mr. Weaver's counsel on January 22 and 24, 2013, gigabytes worth of seat belt buckle latching and unlatching "test videos."  Mr. Weaver maintains that these are videotape demonstrations conducted under Dr. Paver's direction and control and are intended as "merely demonstrative aids to illustrate Dr. Paver's opinion" (Dkt. 66, a 6-7).  Mr. Weaver asserts that these demonstrations could have all been and still can be done in the courtroom before the jury (Dkt. 66, at 7).  He also asserts that "[t]he 'other seat belt buckles and latch plates' used in the demonstration, as well as the new seat belt buckle purchased from a Toyota dealer, at the request of the Defendants, could be immediately shipped overnight to the defense experts, for the defense experts' examination" (Dkt. 66, at 7).

II.      **Analysis**

Based on this Court's review of all materials submitted and the record in this case, seatbelt defect evidence is relevant, given the claims and defenses the parties can reasonably be expected to assert in this case at trial.  This determination is supported by plaintiff's and defendants' initial expert disclosures.  The Court acknowledges there may be legal and evidentiary reasons such evidence is not admissible at trial, but those arguments have not been presented by the parties and are not before the Court.

The Court conducted an initial telephone hearing with counsel for the parties when this motion was filed.  Based on counsels' representations on that call and the filings submitted on these issues, the Court determined the parties required time to develop seatbelt defect evidence, to be able to present such evidence and to prepare to counter such evidence effectively in advance of and at trial.  For this reason, in part, the Court continued the trial of this matter.

The Court will not go item by item through the materials Mr. Weaver is alleged to have belatedly produced.  Instead, this Court rules that materials disclosed by Mr. Weaver after his initial expert reports were produced may not be relied upon by Mr. Weaver in an effort to bolster or otherwise support his expert's disclosed opinions.  The initial opinions produced must stand on their own with the materials provided or cited at the time those initial opinions were produced.  In other words, materials that Mr. Weaver now contends (1) do not alter the original opinions of such experts stated in their expert reports, (2) are in part cumulative of materials previously produced, (3) were not necessary for the formulation of plaintiff's expert opinions stated in their initial expert reports, (4) are in part demonstrative aids which according to Mr. Weaver are not under court decisions necessary to be endorsed or provided with disclosures, and (5) do not alter the prior opinions of plaintiff's experts must be confined to those categories.

With this determination, the Court does not intend to foreclose further challenges to these materials.  Instead, the Court determines at this stage the materials may not be used to bolster or otherwise support the initial disclosed opinions of Mr. Weaver's experts.

With that, the Court makes clear it is not at this stage prohibiting Mr. Weaver's experts from testifying about alleged defects with the subject vehicle's seat belt system as disclosed in their initial expert reports or about materials upon which they intend to rely for impeachment of defendants' experts.   The Court cautions that all opinions an expert witness can reasonably anticipate offering at trial – whether offering the opinion affirmatively or as impeachment or rebuttal – should be disclosed in advance of trial.

In regard to the 1997 Ford Explorer Demonstration (Dkt. 66, at 4), the Court will not rule in advance on Mr. Weaver's disclosed plan to show this evidence to the jury without admitting it by having Dr. Paver testify about it and citing Federal Rule of Evidence 803(18), except to point out to the parties that this Court will rule on objections raised in advance or at the time of trial, will hold all parties to the same standards under the Federal Rules of Evidence, and will not take judicial notice under Rule 803(18) of this demonstration or any other materials presented based on the record before the Court.

In regard to the seat belt buckle latching and unlatching "test videos," this Court previously ruled that materials disclosed by Mr. Weaver after his initial expert reports were produced may not be relied upon by Mr. Weaver in an effort to bolster or otherwise support his expert's disclosed opinions.  Mr. Weaver appears to disclaim that motive in regard to these test videos.  He claims instead that they are demonstrations that could have all been and still can be done in the courtroom before the jury.  The Court will consider these test videos as such and will rule on any evidentiary challenges to the videos if and when such challenges are made.

A new scheduling order will be entered by separate order.  Discovery will remain open until May 22, 2013, for the limited purpose of conducting the depositions of Dr. Paver, Dr. Batzer, Mr. Hooker, Michael Sanders, Charles Butler, and Peter Dishart.  If a party wishes to take another deposition within this extended period of discovery, and the deposition cannot be taken by agreement, that party may file a motion with the Court.

SO ORDERED this 1st day of March, 2013.

Kristine G. Baker
United States District Judge