**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

| | | |
|---|---|---|
| **RICKY WEAVER, as Personal Representative of the Estate of MICAH WEAVER, Deceased,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CAUSE NO. 1:11-CV-00025-KGB** |
| **TOYOTA MOTOR CORPORATION, a Japanese corporation; TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,** | § § § § § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § | |

## DEFENDANTS' MOTION IN LIMINE

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. file this Motion in Limine and would respectfully show the Court as follows:

**I.**

Defendants respectfully request that, before the voir dire examination of the jury panel has begun, before any opening statements are made to the jury, and before the introduction of any evidence, the Court instruct Plaintiff and all of Plaintiff's witnesses to refrain from making any mention through interrogation, voir dire examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case, with regard to the following:

---

1.  <u>**UNINTENDED AND/OR SUDDEN ACCELERATION**</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding unintended and/or sudden acceleration issues involving Toyota vehicles generally, or any evidence that suggests or implies that the subject 2000 Toyota 4Runner ("4Runner") unintentionally or suddenly accelerated at the time of the accident at issue in this case.  As described below, such matters are inadmissible because at a minimum: (1) they are entirely irrelevant to the issues in this case; (2) many such references would relate to settlements or settlement negotiations; (3) many such references would be inadmissible hearsay; (4) they would be unfairly prejudicial, confusing, misleading to the jury, and a needless waste of time; and/or (5) plaintiff cannot demonstrate the requisite substantial similarity of any vehicle/incident necessary to offer evidence of other incidents.  The scope of inadmissible matters related to unintended acceleration would include, but not necessarily be limited to, any of the following (collectively "Unintended Acceleration Matters"):

- Any mention of alleged unintended acceleration incidents or investigations thereof

- Any recalls related to potential floor mat entrapment or slow-to-return pedals

- Any investigations by any federal, state or local government agency, or subdivision thereof, of unintended acceleration allegations

- Any Congressional hearings or testimony related to alleged unintended acceleration incidents or investigations thereof

- Any settlements or settlement negotiations related to unintended acceleration, including without limitation resolution of regulatory or other governmental matters, the economic loss class action settlement or the ongoing "Intensive Settlement Process" in the MDL

- Any other litigation or related investigations, whether civil, criminal, or regulatory involving allegations of unintended acceleration

- Any media coverage of the above topics

- Any suggestion that the subject 4Runner, at the time of the subject accident, was accelerating or the throttle was open for any reason other than the intentional application of the accelerator pedal by Micah Weaver, including any implication that the 4Runner's throttle remained open for unknown reasons, that the engine was in a high or full power setting without attributing that setting to Weaver's accelerator pedal application, or that the vehicle was accelerating for unknown reasons.

Any reference to, mention of, or evidence related to the Unintended Acceleration Matters would be contrary to Plaintiff's allegations in this cause and would be clearly irrelevant, because it would not go to any fact of consequence in determining this action.   Fed. R. Evid. 401, 402.   Plaintiff has never alleged any defect related to unintended acceleration issues as a theory in this case, and Plaintiff's current pleading includes no allegations or reference to such issues.   Plaintiff's Corrected Amended Complaint (Dkt. No. 44-1).   Plaintiff's experts also have expressed no opinions related to such issues.   Notably, if Plaintiff had intended to bring any such unintended acceleration claims in this lawsuit, it should have been consolidated in the Toyota Unintended Acceleration Multi-District Litigation currently pending in the United States District Court for the Central District of California as Cause Number 8:10-ml-02151-JVS-FMO, styled *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales, Practices and Products Liability Litigation* ("MDL").

Additionally, many such references, mentions, or evidence of the Unintended Acceleration Matters would relate to settlements or settlement negotiations which are clearly inadmissible under Federal Rule of Evidence 408.   *See* Fed. R. Evid. 408; *see also EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 791 (8th Cir. 2009).   As described

above, the scope of unintended acceleration references to be precluded specifically includes settlements of other litigation, ongoing negotiations related to such litigation, and any payments arising from such settlements or negotiations.  These facts and topics are certainly inadmissible.  *See* Fed. R. Evid. 401, 402, 403, 408.

Moreover, any such reference, mention, or evidence of Unintended Acceleration Matters should be prohibited because any probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  Fed. R. Evid. 403.  In *Ahlberg v. Chrysler Corporation*, the Eighth Circuit Court of Appeals addressed a similar issue and upheld the exclusion of evidence related to a "retrofit program" conducted by Chrysler.  *See Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 632-34 (8th Cir. 2007).  *Ahlberg* involved a fatal car accident in which a 1999 Dodge Ram was alleged to be defective for not having been equipped with a brake-shift interlock (BSI) device.  *Id.* at 632.  In 1996, Chrysler, the manufacturer of the Dodge, had voluntarily conducted a retrofit program to install BSI devices on several model years of Jeep Cherokees in response to reports of "unintended acceleration" in those model year Jeeps.  *Id.*  The *Ahlberg* court noted that evidence of the retrofit program raised "substantial issues of confusion and prejudice" with regard to the Dodge Ram at issue in the case and also offered "minimal" probative value for the plaintiff's strict liability and negligence claims, since the retrofit program applied to an entirely different vehicle.  In this case, not only are the unintended acceleration recalls and issues related to different model/model year vehicles from the subject 4Runner, but they are not at all related to Plaintiff's defect allegations.  The unintended acceleration recalls and related matters described above would raise at least the same substantial issues of

confusion and prejudice as the retrofit program in *Ahlberg*, but would offer even less probative value and should properly be excluded under Federal Rules of Evidence 401, 402, and 403.

Moreover, any reference to, mention of, or evidence related to the Unintended Acceleration Matters, in addition to being irrelevant, unfairly prejudicial, and confusing, would likely also be presented as inadmissible hearsay without an exception.  Fed. R. Evid. 801, 802.  Plaintiff has not designated or developed testimony from anyone purporting to have direct, personal knowledge of any of the above-described matters.

In addition, any reference to, mention of, or evidence related to the Unintended Acceleration Matters should also be inadmissible as proffered evidence of other incidents, without the requisite showing of substantial similarity.  *See Lovett ex rel. Lovett v. Union Pacific R.R. Co.*, 201 F.3d 1074, 1080-81 (8th Cir. 2000); *Drabik v. Stanley-Bostitch, Inc.*, 997 F.2d 496, 508-09 (8th Cir. 1993); *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1108-09 (8th Cir. 1988).  In *Lewy*, the Eighth Circuit reversed a trial court's decision allowing the introduction of evidence of several other incidents, a product recall, and a lawsuit settlement involving a Remington Model 600 rifle when the rifle at issue was a Remington Model 700.  *Lewy,* 836 F.2d at 1108-09.  The *Lewy* court emphasized that since the plaintiff had not shown the two product models to be substantially similar or the other incidents to have occurred under circumstances substantially similar to the subject incident, all of the Model 600 evidence should have been excluded.  Similarly, here, Plaintiff has not shown and cannot show that the subject 4Runner and subject incident are substantially similar to the vehicles and incidents involved in the Unintended Acceleration Matters.

____GRANTED          ____DENIED          ____AGREED

## 2. <u>OTHER VEHICLES, INCIDENTS, ACCIDENTS, CLAIMS, OR LAWSUITS</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any vehicle, incident, accident, claim, complaint, report, or lawsuit alleging injuries or damages from any accident involving the same model vehicle or any allegedly similar vehicle, or any other claim, complaint, report, or lawsuit involving the Defendants.   Any other vehicles and/or incidents identified by Plaintiff would not meet the required threshold for similarity, and the authenticity of the evidence cannot be established.  Unless it is first shown outside of the jury's presence that these other vehicles and other incidents involve substantially similar circumstances as the case at hand, any other incident is irrelevant, and introducing such matters would cause confusion to the jury and be highly prejudicial to Defendants.  Fed. R. Evid. 401, 402, 403; *see also Lovett ex rel. Lovett* , 201 F.3d at 1080-81; *Drabik*, 997 F.2d at 508-09; *Lewy*, 836 F.2d at 1108-09.

Plaintiff should also not be permitted to cross-examine Defendants' witnesses regarding other accidents or other unrelated tests, for impeachment purposes or otherwise.  Cross-examination which attempts to impeach by offering irrelevant hearsay information is improper.  *See Drabik*, 997 F.2d at 508-09.

____GRANTED          ____DENIED          ____AGREED

## 3. <u>UNSUPPORTED DEFECT THEORIES</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any allegations that the subject

4Runner was defective with respect to its seat belt systems or its handling and stability performance.[1]   Plaintiff's own experts have disavowed any defect opinions regarding those alleged defect theories, and Plaintiff therefore has no competent evidence that could support such claims.[2]   Accordingly, any mention of, reference to, or evidence regarding alleged defects in those systems would have minimal, if any, probative value or relevance to facts actually of consequence in determining this action and would be highly prejudicial to Defendants, as well as confusing and misleading to the jury.  Fed. R. Evid. 401, 402, 403.

Specifically, Plaintiff designated three experts to testify at trial—Dr. Jacqueline Paver, Dr. Stephen Batzer, and Mr. Robert Hooker.  Each has been deposed.  Dr. Paver testified that she is not an expert in the design or development of automotive products and that she does not intend to offer any opinions identifying any of the defects in this case.[3]   Mr. Hooker also testified that his role in this case is limited to authenticating and describing certain testing he has conducted, that he no longer intends to address any handling and stability issues, and that he has no opinion on whether Micah Weaver was belted at the time of the crash.[4]   Finally, Dr. Batzer testified

---

[1] Plaintiff's Pre-trial Disclosure Sheet (Dkt. No. 97) includes specific allegations of defects in the subject 4Runner including the following: (1) "The seat belt buckle of the restraint system was designed where it was capable of inadvertent unwanted release during an accident scenario"; and (2) "The vehicle was designed with poor lateral stability which rendered the vehicle defective and prone to loss of control and/or rollover during normal driving maneuvers."  Plaintiff's current Corrected Amended Complaint (Dkt. No. 44-1) includes the lateral stability allegation but does not include the restraint system allegation.

[2] *See* Excerpts from December 2, 2013 Depo. of Stephen Batzer, attached as Exhibit 1 ("Batzer Depo."), at 18:25 – 20:20, 109:24 – 110:6; Excerpts from December 27, 2013 Depo. of Robert Hooker, attached as Exhibit 2 ("Hooker Depo."), at 19:17 – 20:19, 57:7-11; Excerpts from December 19, 2013 Depo. of Jacqueline Paver, attached as Exhibit 3 ("Paver Depo."), at 50:7 – 51:17, 65:17 – 66:3.

[3] *See* Paver Depo. (Exhibit 3) at 50:7 – 51:17, 65:17 – 66:3.

[4] *See* Hooker Depo. (Exhibit 2) at 19:17 – 20:19, 57:7-11.

that he intended to defer to Dr. Paver on any questions of seat belt performance and that he has no opinions on the subject vehicle's handling and stability.[5]  These experts' sworn testimony contradicts Plaintiff's Designation of Experts in this matter, which suggested, among other things, that Dr. Paver would testify that the vehicle's restraints were defectively designed and that Mr. Hooker would testify that the subject vehicle was defective due to various handling and stability concerns.[6]

In light of Plaintiff's experts renouncing the opinions attributed to them in Plaintiff's designations or in their own initial reports regarding these defect theories, it would be highly prejudicial to Defendants for Plaintiff or Plaintiff's witnesses to be allowed to make any mention of, make any reference to, or put on any evidence regarding alleged defects in the subject vehicle's restraint system or regarding the subject vehicle's handling and stability during the trial of this matter.

_____GRANTED            _____DENIED            _____AGREED

### 4.   SEAT BELT USE AND BUCKLE UNLATCHMENT OPINIONS

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding an opinion that Micah Weaver was wearing his seat belt at the time of the subject crash or that his seat belt buckle inadvertently unlatched during the crash.  No factual witnesses have testified based on personal knowledge that Micah was wearing his seat belt at the time of the crash.  Plaintiff's expert witnesses Robert Hooker and Stephen Batzer both indicated that they

---

[5] *See* Batzer Depo. (Exhibit 1) at 18:25 – 20:20, 109:24 – 110:6.

[6] *See* Plaintiff's Designation of Experts, attached as Exhibit 4.

---

would defer to Dr. Jacqueline Paver's opinion that Micah Weaver was wearing his seat belt at the time of the crash.[7]   Dr. Paver testified, "there's evidence that supports belt usage.  To say definitive, more probable than not, I don't believe that's present in this case, but, again, with the belt, you don't always get the belt marks that you would see in a frontal crash, in a rollover crash."[8]   Dr. Paver's opinion that there is some evidence consistent with belt use but not enough to say Micah Weaver was more likely than not belted is self-admittedly speculative and therefore could not be helpful to the jury.  Fed. R. Evid. 702.

Dr. Paver also testified at length regarding her opinion that the subject seat belt buckle is susceptible to inadvertent unlatchment.  Her only original basis for that opinion was apparently her own subjective experience in unlatching the subject buckle during a vehicle inspection.[9]   After the expert disclosure deadlines in this case had passed and after Dr. Paver had apparently already formed her opinion that the seat belt was subject to inadvertent unlatch, she arranged for a legal investigator named Cord Adams to perform various demonstrations to "illustrate" her opinions.[10]   According to Dr. Paver, these demonstrations were not done according to any written protocol or test procedure, were not based on any standard test used by any manufacturer or regulations, and were done quickly and she "wasn't playing my normal meticulous game."[11]   Notably,

---

[7] *See* Batzer Depo. (Exhibit 1) at 28:21 – 34:20; Hooker Depo. (Exhibit 2) at 57:7-11.

[8] *See* Paver Depo. (Exhibit 3) at 57:19 – 58:1.

[9] *See* Plaintiff's Response to Defendants' Motion to Exclude (Dkt. No. 66) at 7; Declaration of Jacqueline Paver (Dkt. No. 65-1) at 1-3.

[10] *See id.*

[11] *See* Paver Depo. (Exhibit 3) at 101:22 – 102:1, 103:11 – 104:3.

---

Plaintiff has previously represented to the Court and to Defendants that the "demonstrations" by Mr. Adams do not constitute a basis for Dr. Paver's opinion, but rather were intended to be used only as in-court "demonstrations" or "merely demonstrative aids to illustrate Dr. Paver's opinion."[12]  Dr. Paver also admitted that she is not an automotive engineer and is not an expert in the design of restraint systems. Thus, Dr. Paver's opinion that the seat belt buckle is susceptible to inadvertent unlatchment is based solely on unreliable facts and data—her own subjective, unrecorded, unmeasured experiences—and is an opinion about which she is not qualified to render expert testimony.  Any mention of, reference to, or evidence of this opinion should be excluded as unreliable expert testimony that would not be helpful but would rather be highly prejudicial and confusing to the jury.  Fed. R. Evid. 401, 402, 403, 702.

Accordingly, neither Dr. Paver nor any of Plaintiff's experts or witnesses should be allowed to offer an opinion that Micah Weaver was belted at the time of the crash or that the subject seat belt buckle inadvertently released during the subject crash.  *See* Fed. R. Evid. 401, 402, 403, 701, 702.

_____GRANTED             _____DENIED             _____AGREED

### 5.  SEAT BELT BUCKLE UNLATCHMENT DEMONSTRATIONS

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the seat belt buckle unlatch demonstration videos or the "Report of Cord Adams" describing those demonstrations.

---

[12] *See* Plaintiff's Response to Defendants' Motion to Exclude (Dkt. No. 66) at 6-7; *see also generally* Defendants' Motion to Exclude (Dkt. No. 60) and related filings (Dkt. Nos. 66, 69, 70, 73).

As already discussed, these video demonstrations were untimely disclosed expert materials which Plaintiff claims were intended to be used as "merely demonstrative aids to illustrate Dr. Paver's opinion."[13]  Defendants filed a Motion to Exclude (Dkt. No. 60) these late-disclosed demonstrations, which led to the Court's March 1, 2013 Opinion and Order.  In that order, the Court ruled:

> In regard to the seat belt buckle latching and unlatching "test videos," this Court previously ruled that materials disclosed by Mr. Weaver after his initial expert reports were produced may not be relied upon by Mr. Weaver in an effort to bolster or otherwise support his expert's disclosed opinions. Mr. Weaver appears to disclaim that motive in regard to these test videos. He claims instead that they are demonstrations that could have all been and still can be done in the courtroom before the jury. The Court will consider these test videos as such and will rule on any evidentiary challenges to the videos if and when such challenges are made.[14]

As described above, Dr. Paver's opinion regarding seat belt buckle unlatchment should be entirely excluded, and thus these demonstrations allegedly intended to illustrate that opinion would clearly become irrelevant.  Even if Dr. Paver's opinion were not excluded, however, these demonstrations would not be admissible.  Admissibility of demonstration evidence depends upon a foundational showing of substantial similarity between the tests conducted and what they purport to represent. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F. 2d 613, 624-25 (8th Cir. 1983); *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir.1969).  Here, Plaintiff cannot show that the tests conducted in these demonstration videos are substantially similar to any events that happened during the subject crash.  Plaintiff is circularly attempting to have Dr. Paver

---

[13] *See generally* Defendants' Motion to Exclude (Dkt. No. 60) and related filings (Dkt. Nos. 66, 69, 70, 73).

[14] *See* March 1, 2013 Opinion and Order (Dkt. No. 73) at 7.

rely on these demonstration tests as a basis for her opinion that the subject seat belt is susceptible to inadvertent unlatchment, then have her display the demonstration videos solely to "illustrate" that opinion.  Almost lost in the circular reasoning is that Plaintiff has no competent evidence which would suggest that the subject seat belt buckle actually inadvertently unlatched in this crash.

There is an additional concern with allowing out-of-court video evidence to be displayed as in-court style demonstrations.  Out-of-court demonstrations may be tried over and over until the desired result is achieved.  Dr. Paver testified at her deposition that Mr. Adams conducted these demonstrations on various buckles other than the subject model and that some of the buckles unlatched during the tests and other buckles did not unlatch.[15]  However, Plaintiff has only disclosed videos of other buckle tests where the alternative buckle designs did not unlatch.  Defendants and the Court have no way of knowing how many undisclosed tests were performed in which the subject buckle did not unlatch or other buckles did unlatch.  It would be patently unfair and highly prejudicial to allow Plaintiff to use these videotaped seat belt buckle "tests" as if they were in-court demonstrations.  Clearly Plaintiff has selectively picked and chosen which "demonstration" results are favorable and has not even produced the others to Defendants in violation of Federal Rule of Civil Procedure 26(a)(2).

The buckle unlatchment "tests" shown in these demonstration videos, even beyond the procedural improprieties described above, should be inadmissible in any event due to the unreliable, non-industry recognized testing methodology.  According to Dr. Paver herself, the tests were not performed according to any written protocol or test

_____

[15] *See* Paver Depo. (Exhibit 3) at 97:17 – 98:7.

_____

procedure, were not based off of any standard test used by any manufacturer or regulations, and were done so quickly that she "wasn't playing my normal meticulous game."[16]  Fed. R. Evid. 702.

Finally, the written Report of Cord Adams regarding these demonstrations should be entirely excluded.  Mr. Adams has never been disclosed as an expert witness in this case.   To the extent Plaintiff intends for Mr. Adams to offer any expert testimony regarding the conduct or results of the demonstrations, such testimony should be wholly inadmissible on that basis alone.   In addition, this written report was disclosed by Plaintiff on December 18, 2013—eleven months after Plaintiff's untimely disclosure of the demonstration videos.   If Plaintiff intends to offer Mr. Adams' report as material relied on by Dr. Paver in forming her opinions, then the report's disclosure was even more untimely than the demonstration videos and should similarly be excluded. Moreover, the report, which merely describes the demonstrations conducted, has minimal probative value which would be substantially outweighed by the risk of confusing and misleading the jury.  Fed. R. Evid. 401, 402, 403, 701, 702.

____GRANTED          ____DENIED          ____AGREED

### 6.   <u>ALL UNTIMELY DISCLOSED EXPERT MATERIALS</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the untimely disclosed expert witness materials which were the subject of Defendants' Motion to Exclude (Dkt. No. 60) without first approaching the bench and establishing in what non-prohibited manner

---

[16] *See* Paver Depo. (Exhibit 3) at 101:22 – 102:1, 103:11 – 104:3.

Plaintiff intends to present such materials.  This Court's Opinion and Order (Dkt. No. 73) clearly ruled that all materials disclosed after Plaintiff produced his experts' reports "may not be relied upon by Mr. Weaver in an effort to bolster or otherwise support his expert's disclosed opinions."  The Court expanded on that ruling by ordering:

> In other words, materials that Mr. Weaver now contends (1) do not alter the original opinions of such experts stated in their expert reports, (2) are in part cumulative of materials previously produced, (3) were not necessary for the formulation of plaintiff's expert opinions stated in their initial expert reports, (4) are in part demonstrative aids which according to Mr. Weaver are not under court decisions necessary to be endorsed or provided with disclosures, and (5) do not alter the prior opinions of plaintiff's experts must be confined to those categories.[17]

Defendants refer the Court and Plaintiff to Defendants' Motion to Exclude (Dkt. No. 60 and Reply in Support of the Motion to Exclude (Dkt. No. 69) for a description of many of the materials that were untimely disclosed, which includes at a minimum the following materials:

- Materials related to 1997 Ford Explorer rollover testing performed by Robert Hooker

- Materials related to a 1996 Volvo XC-90 laminated glass sled test performed by Eliseco systems

- Videotaped seatbelt unlatch demonstrations

- Any late disclosed crash test videos, photographs, data, reports, or related materials whether conducted for this case or otherwise

- Documents, tests, data, videos, and reports contained in Stephen Batzer's Crashworthiness Notebook folder, Common Glass Index folders, and Common Roof Documents folders

---

[17] *See* March 1, 2013 Opinion and Order (Dkt. No. 73) at 6.

- Materials contained in folder titled Unwanted Safety Belt Release produced as Paver Documents-Videos

- Printouts from the Enhanced Protective Glass Automotive Association website, numerous materials authored by or related to the EPGAA, and videos related to alleged benefits of enhanced protective glass

- Technical articles discussing inadvertent unlatchment and patents for alleged alternative designs that would allegedly prevent inadvertent release of seat belt buckles.

_____GRANTED            _____DENIED            _____AGREED

## 7.  PLAINTIFF EXPERT'S ACCIDENT RECONSTRUCTION

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding a purported accident reconstruction performed by Plaintiff's expert Stephen Batzer.  Batzer's attempted reconstruction of the subject crash lacks sufficient underlying data, was not performed according to any reliable methodology, and does not include reliable conclusions about any details of the crash scenario that would be helpful to the jury in this case.  Indeed, Batzer did not create any reconstruction map or diagram depicting any portion of the crash event or outlining his opinion of the crash scenario, and Batzer admitted that he has not analyzed what portions of the vehicle may have struck the ground at what points during the rollover and that he cannot tell which wheels created the gouge on the roadway shoulder where Batzer believes the vehicle was tripped to initiate the rollover event.[18]  Batzer unmethodically performed several scene inspections where he testified, for example, he was "getting out and taking a look, looking around to see if I've changed

---

[18] *See* Batzer Depo. (Exhibit 1) at 68:12 – 70:12, 103:13-22.

my mind about anything."[19]  When asked if he noticed any of the numerous rim shaped gouges importantly indicative of where wheels struck pavement during a rollover, he noted "I *believe* I saw one there."[20]  With respect to scratch patterns visible on the subject vehicle which can be used to estimate the number of rolls it experienced, Batzer did not create any scratch map or diagram of scratches visible on the vehicle—instead he merely eye-balled the scratches.[21]  Batzer performed one basic mathematical calculation to obtain a speed of the vehicle at its initial trip into the rollover of 52 m.p.h., but his analysis of the vehicle's speed prior to that when it first went off road was simply:

> Approximately the speed limit, 55.  May have been going faster; he may have been going slower.  There is no good way to know exactly what it was. . . . So presumably when he goes off to the right, he's going faster.  So 55 is faster, but 58 is faster too.  And so there isn't good document—you know, did he take his foot off the gas?  We don't know.  Did he brake?  We don't know.

Without any stated methodology for arriving at his few conclusions regarding certain aspects of the crash scenario, Batzer's opinions about the entire crash sequence are inherently suspect, unreliable, and no more than the "ipse dixit" of an expert witness. As such, they would not be helpful to the jury and would pose a substantial risk of confusing or misleading the jury instead.  Therefore, any reference to, mention of, or evidence regarding Batzer's purported reconstruction or his opinions regarding any details of the crash sequence should not be admissible.  Fed. R. Evid. 401, 402, 403, 702.

_____

[19] *See id.* at 64:1 – 65:2.

[20] *See id.* (emphasis added).

[21] *See id.* at 65:3-16.

_____

____GRANTED          ____DENIED          ____AGREED

### 8.   <u>SIZE OF COMPANY OR NET WORTH</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that the jury should consider the net worth or financial status of Defendants or disparity in size and/or wealth of the parties unless and until the Court should find that such matters are relevant and their probative value outweighs the prejudicial effect.  Such comparisons would be irrelevant and immaterial to any issue to be decided by the jury, and would irreparably, unduly, and materially prejudice the jury against the rights of Defendants.  *See* Fed. R. Evid. 401, 403.

____GRANTED          ____DENIED          ____AGREED

### 9.   <u>UNTIMELY DISCLOSED EVIDENCE</u>

Plaintiff and Plaintiff's witnesses should not be allowed to mention, reference, or put on any evidence involving testimony that has not been properly and timely disclosed in response to Defendants' interrogatories, requests for production or other written discovery.  *See.* Fed. R. Civ. P. 26.  Such evidence must be precluded from evidence at trial because it is untimely and a violation of the parties' duty to supplement discovery prior to trial.  *Id.*  Furthermore, the admission of such evidence would constitute trial by ambush, an unfair surprise, and endorsement of dilatory and abusive discovery tactics, and an unwarranted prejudice to Defendants' right to fully and fairly prepare for the trial of this matter.  *See id.*; Fed. R. Evid. 403.

____GRANTED          ____DENIED          ____AGREED

### 10.   <u>UNDISCLOSED OR UNRELATED DEFECTS</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any alleged defects of the subject vehicle, or any of its component parts, which have not been previously disclosed to Defendants or are not causally connected to the accident made the basis of this lawsuit or Plaintiff's injuries and damages.   The only active defect theories currently pled by Plaintiff and supported by Plaintiff's expert witnesses relate to the design of the subject vehicle roof and glazing components.   Any attempts to offer evidence of any other alleged defect or problems have no materiality or relevance to the issues in this lawsuit, are untimely, a violation of the parties' duty to supplement discovery prior to trial, and could only serve to prejudice and unfairly surprise Defendants.   Fed. R. Evid. 403; Fed. R. Civ. P. 26.   Furthermore, the admission of such evidence would constitute trial by ambush, an endorsement of dilatory and abusive discovery tactics, and an unwarranted prejudice to Defendants' right to fully and fairly prepare for the trial of this matter.   *Id.*

_____GRANTED                _____DENIED                _____AGREED

### 11.   <u>EXPERT TESTIMONY NOT PREVIOUSLY DISCLOSED</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the opinions, bases, or conclusions of Plaintiff's experts regarding the subject vehicle's safety, performance, design, manufacture, or marketing, the cause of the accident, and the cause of Plaintiff's injuries or any damages, which were not properly disclosed pursuant to the Federal Rules of Civil Procedure, any applicable order of the Court, and/or the agreement of the parties.   Such undisclosed evidence would be an unfair surprise, an

abuse of the discovery process, a violation of the parties' duty to supplement discovery prior to trial, and would unfairly prejudice Defendants.  Fed. R. Evid. 403; Fed. R. Civ. P. 26.

\_\_\_\_GRANTED          \_\_\_\_DENIED                \_\_\_\_AGREED

## 12. <u>STATEMENTS REGARDING "CONSUMER SAFETY" AS PURPOSE OF SUIT</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that this case is one brought to establish standards of consumer safety or to enforce consumer safety principles, or that the reason for bringing this suit is based on a desire to enhance consumer safety, or any statement of similar import, for the reason that such argument or statement is misleading and confusing to the jury, in that such is not the purpose for bringing the suit at all.  Rather, this suit is one brought to collect money damages.  If it not brought on behalf of all consumers, or for the purpose of establishing consumer safety, or for any other such purposes of establishing consumer safety, but rather only to collect money.  Such an argument or statement by counsel is inflammatory and calculated to prejudice the rights of Defendants and create bias and sympathy in favor of Plaintiff, which is improper and impermissible.  Fed. R. Evid. 402, 403.

\_\_\_\_GRANTED          \_\_\_\_DENIED                \_\_\_\_AGREED

## 13. <u>INTERPRETATION OF DEFENDANTS' DOCUMENTS BY PLAINTIFF'S EXPERTS</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any attempt by Plaintiff's experts to provide "interpretation" of Defendants' internal documents.  Plaintiff's experts or other

witness are not and were not Defendants' employees, and thus bring no personal knowledge regarding any of Defendants' documents.   Plaintiff's experts' subjective interpretation of Defendants' documents is loosely concealed jury argument, which is not the province of testimony from any witness, expert or otherwise.   Such testimony from a witness without personal knowledge is pure speculation, and should be excluded.

_____GRANTED            _____DENIED             _____AGREED

### 14.   **INFLAMMATORY REFERENCE TO DEFENDANTS**

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that Defendants are foreign or alien; that Defendants take advantage of the poor or the unsophisticated; that Defendants are callous or unconcerned about safety; or any other statement, argument, inference or comment which would tend to create or show that there is a conflict between Defendants' business and consumers; or that Defendants are callous, greedy or overreaching, for the reason that any such statements, inferences or arguments are entirely false and are calculated solely for the purpose of creating prejudice against Defendants for the purpose of establishing a bias in the minds of the jury against Defendants, or for the purpose of inflaming the emotions of the jury against Defendants and in favor of Plaintiff.  Fed. R. Evid. 402, 403.

_____GRANTED            _____DENIED             _____AGREED

### 15.   **PLAINTIFF'S FINANCIAL CONDITION**

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of documents regarding Plaintiff's finances,

inability to pay medical or other expenses, non-existent or insufficient insurance, or any other matter relating to Plaintiff's financial status, since such matters have no relevance or probative value to any issue which is in question in this case and is calculated to cause unfair surprise in the minds of the jury against Defendants.  Simply put, there is no evidence that plaintiff or any of the decedent's Wrongful Death Act beneficiaries were financially dependent upon the decedent, making evidence of their financial status wholly irrelevant on the question of liability and to the amount of damages that may be recoverable.  Fed. R. Evid. 401, 402.  Furthermore, the admission of such evidence would constitute trial by ambush, an unfair surprise, and endorsement of dilatory and abusive discovery tactics, and an unfair prejudice to Defendants' right to fully and fairly prepare for the trial of this matter.  *Id.*; Fed. R. Evid. 403.

_____GRANTED          _____DENIED          _____AGREED

### 16.  <u>INTENDED USE OF JUDGMENT PROCEEDS</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding how or in what manner Plaintiff intends to spend or otherwise distribute proceeds from any judgment or verdict rendered in this case for the reason that such matters are irrelevant and immaterial to any issue involved in this case.  Fed. R. Evid. 402, 403.

_____GRANTED          _____DENIED          _____AGREED

### 17.  <u>REFERENCE TO SETTLEMENT DISCUSSIONS</u>

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding settlement discussions between Defendants and Plaintiff arising out of the accident in question.  Fed. R. Evid.  408.

____GRANTED          ____DENIED          ____AGREED

### 18.  AMOUNT OF DAMAGES

Plaintiff's counsel should not be allowed during *voir dire* examination to ask the jury panel if anyone on the panel would not be willing to award a specific sum of damages under any circumstances, since this attempts to commit the jury to a certain amount of damages prior to hearing the evidence.

____GRANTED          ____DENIED          ____AGREED

### 19.  REFERENCE TO REPRESENTATION BY DEFENSE COUNSEL, SIZE, OR LOCATION OF LAW FIRMS

Plaintiff and Plaintiff's witnesses should not be allowed to mention, reference, or put on any evidence that the attorneys for Defendants regularly represent Toyota, other defendants, corporations, insurance companies or manufacturers in lawsuits, or that Defendants' attorneys represent Toyota in other lawsuits.  Also, Plaintiff's counsel and their witnesses should not make mention of the number of attorneys who are members of the firm in which Defendants' attorneys practice or the number of attorneys who have appeared on Defendants' behalf in this case.  Further, evidence regarding the residence of the lawyers representing Defendants at any trial, deposition or court proceeding in this matter is entirely irrelevant.  Fed. R. Evid. 401, 402, 403.

Plaintiff and Plaintiff's witnesses should also not be allowed to make any mention of, make reference to, or put on any evidence of the number of attorneys or legal assistants in Defendants' attorneys' law firms or the city where the lawyers reside. Such information is not probative of any material fact and would influence the jury, thus

unfairly prejudicing Defendants.  *United States v. Socony – Vacuum Oil Co.*, 310 U.S. 150 (1940); s*ee also* Fed. R. Evid. 401, 402, 403.

____GRANTED          ____DENIED          ____AGREED

### 20.  EVIDENCE OF RECALLS

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any alleged recalls, service campaigns, or other similar matters which are unrelated to Plaintiff's defect allegations in this case, the accident made the basis of this lawsuit, and/or Plaintiff's injuries and damages.  Any attempts to offer evidence of any these types of recalls would have no materiality or relevance to the issues of this lawsuit, would be untimely, and could only serve to unfairly prejudice and unfairly surprise Defendants.  Fed. R. Evid. 403.

____GRANTED          ____DENIED          ____AGREED

### 21.  PRIOR SUITS OR JURY VERDICTS INVOLVING DEFENDANTS

Plaintiff and Plaintiff's witnesses should not be allowed to mention, make reference, or put on any evidence suggesting that Defendants may have been involved in any prior suits, or that a party has never been involved in a prior suit or that another jury entered a verdict against Defendants in another lawsuit.  In sum, evidence of other prior or pending cases or verdicts is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of delay. *See* Fed. R. Evid. 403, 404.

____GRANTED          ____DENIED          ____AGREED

## 22.  USE OF EXHIBITS THAT HAVE NOT BEEN PRODUCED OR MADE AVAILABLE FOR INSPECTION

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence related to an exhibit that is not available for inspection before it is displayed to the jury.  If the exhibit is in electronic format only, then it should be made available for inspection in electronic format.  Display of the exhibit before it is inspected could result in harm to Defendants and is therefore unfairly prejudicial.  FED. R. EVID. 402, 403.

____GRANTED             ____DENIED                 ____AGREED

## 23.  ACCIDENT HISTORY OF THE PRODUCT LINE

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the accident history of Toyota vehicles or vehicles designed, manufactured or sold by Toyota or related companies, including any reference to Defendants as "a high insurance risk" or "high risk" manufacturer or other such terms calculated to bring before the jury accidents or an accident history involving vehicles designed, manufactured or sold by Defendants or related companies.  References to accident history or other such references are calculated to bring before the jury accidents other than the occurrence in question in this case, and testimony and reference to such other accidents would be hearsay and calculated to deprive Defendants of the right of cross-examination.  Further, there would be no information available with regard to the type or nature of the products involved, the conditions and circumstances under which such other accidents may have occurred, or the conduct of the injured person or some other third person as to any other accident making up such accident history.  Without such information, any other accidents making

up the so-called accident history of Defendants' vehicles would be irrelevant and inadmissible and, consequently, the accident history based upon any such other accidents would be likewise inadmissible.  Fed. R. Evid. 402, 403, and 802.

      ____GRANTED          ____DENIED          ____AGREED

### 24.  ATTEMPT TO CALL ATTORNEYS AS WITNESSES

The Court should prevent any attempt by Plaintiff to call counsel for the Defendants, including in-house counsel, as witnesses in this matter.  Plaintiff has not identified counsel for the Defendants as fact witnesses.  Fed. R. Evid. 402, 403.  Moreover, the only information in the possession of counsel would be protected from discovery by the attorney-client privilege or the work product doctrine.  Fed. R. Evid. 502.

      ____GRANTED          ____DENIED          ____AGREED

### 25.  PRE-TRIAL MATTERS

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any action by the Court in ruling upon any matter prior to the actual trial of this cause or that the pleadings or other matters filed by Defendants were in a particular form or of a particular nature, including the filing and rulings of this Motion in Limine, the discovery process, discovery disputes, Court rulings regarding discovery, or other matters, which should be resolved prior to the trial of this matter and outside the presence of the jury.  FED. R. EVID. 402, 403.

      ____GRANTED          ____DENIED          ____AGREED

### 26.  **EFFECT OF JURY'S ANSWERS**

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention, make any reference, or put on any evidence that may tend to inform the jury of the effect of their answers to the interrogatories posed to them, including any comments to the effect that if questions are not answered in a certain way that no recovery will be had.  *See Brewer v. Jeep Corp.*, 546 F. Supp. 1147, 1156 (W.D. Ark. 1982), *aff'd,* 724 F.2d 653 (8th Cir. 1983).

____GRANTED              ____DENIED              ____AGREED

### 27.  **PRODUCTION OF DOCUMENTS**

Plaintiff and Plaintiff's witnesses should not be allowed to make any mention, make reference, or put on any evidence that Defendants, their witnesses, or their counsel have refused or allegedly refused or failed to timely produce or caused to be produced any document, report, statement, or other material or information.  *See* FED. R. EVID. 401, 402, 403.

____GRANTED              ____DENIED              ____AGREED

### II.

Defendants move the Court to order Plaintiff and all of Plaintiff's witnesses to refrain from making any mention through interrogation, voir dire examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case

Defendants also move the Court to order that each of the above matters are generally inadmissible, irrelevant, and highly prejudicial to Defendants and would deny Defendants the right to a fair trial, even if a timely objection were made and sustained.

Defendants further move the Court that, should any matters set forth above become material, relevant, or admissible, Plaintiff should bring such matters to the Court's attention outside the presence of the jury and should receive a favorable ruling thereon before mentioning those items before the jury.

### III.

**WHEREFORE, PREMISES CONSIDERED**, Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. respectfully request that the Court grant this Motion in its entirety and enter an order suppressing all of the above-enumerated items until such time as those items have first been presented to the Court outside the hearing and presence of the jury and the Court has made its ruling on the admissibility thereof.

Respectfully submitted,

*/s/ DAVID P. STONE*
**KURT C. KERN** (*admitted pro hac vice*)
Texas Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE** (*admitted pro hac vice*)
Texas Bar No. 19289060
David.Stone@bowmanandbrooke.com
**CRAIG D. DUPEN** (*admitted pro hac vice*)
Texas Bar No. 24065177
Craig.Dupen@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 616-1700
Facsimile:  (972) 616-1701

and

**EDWIN L. LOWTHER, JR.** (81107)
elowther@wlj.com
**WRIGHT, LINDSEY & JENNINGS LLP**
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442

**ATTORNEYS FOR TOYOTA MOTOR SALES,
U.S.A., INC. and TOYOTA MOTOR
CORPORATION**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 18th day of February, 2014.

*/s/ DAVID P. STONE*