IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| RICKY WEAVER, as Personal Representative of the Estate of MICAH WEAVER, Deceased, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. 1:11-CV-025-JMM |
| TOYOTA MOTOR CORPORATION, a Japanese corporation; TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, | § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

**DEFENDANTS' BRIEF SUPPORTING OBJECTIONS TO PLAINTIFF'S SEAT BELT DEFECT CLAIMS AND RELATED TESTIMONY OR EVIDENCE**

TO THE HONORABLE COURT:

COME NOW Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. in the above-styled and numbered action, file this Brief Supporting Objections to Plaintiff's Seat Belt Defect Claims and Related Testimony or Evidence, and for such would respectfully show the Court as follows.

**Summary**

Broadly, this case presents two independent issues related to the driver's seat belt of the subject vehicle. The first issue is whether Micah Weaver was wearing his seat belt at the time of the crash. The second issue is whether the subject 4Runner's driver seat belt system was defectively designed or manufactured, as a claimed basis for imposing liability against Defendants. Defendants agree that evidence regarding the

first issue is relevant in this case due to Defendants' affirmative defenses.[1]  However, Defendants object to Plaintiff offering any evidence or testimony claiming that the driver seat belt system was supplied by Defendants in a defective condition, which rendered it unreasonably dangerous.  Plaintiff cannot offer sufficient evidence or testimony to identify a specific defect in the driver's seat belt system, Plaintiff's expert opinions on the issue are unhelpful and unreliable, and Arkansas' limited doctrine allowing solely circumstantial evidence of a defect is inapplicable.  Finally, the driver's seat belt in the subject vehicle at the time of the crash had been replaced and was therefore not supplied by Defendants when the vehicle was distributed.  Accordingly, the Court should sustain Defendants' objections to any evidence, testimony, or argument that the 4Runner's driver seat belt was defective.

## Arguments and Authorities

Plaintiff has insufficient evidence as a matter of law to prevail on a strict products liability claim that the subject vehicle's driver seat belt was supplied by Defendants in a defective condition, which rendered it unreasonably dangerous.  The key is that (1) Plaintiff has no evidence of a specific defect in the design or manufacture of the subject seat belt, and (2) Plaintiff's vague seat belt buckle unlatchment susceptibility theories constitute insufficient circumstantial evidence of a defect as a matter of law.

### I.    *Ruminer v. General Motors Corporation* Details the Appropriate Analysis.

A 2006 opinion and order by the Honorable Garnett Thomas Eisele of the U.S. District Court for the Eastern District of Arkansas dealt with a vague seat belt defect allegation remarkably similar to Plaintiff's assertions here.  *See Ruminer v. Gen. Motors*

---

[1] Defendants nevertheless reserve their other objections to certain items of evidence or proposed testimony on the issue of Micah's potential seat belt use, such as those based on Federal Rules of Evidence 403 or 702, late disclosure, or other arguments or authorities.

*Corp.*, No. 4:03-CV-00349 GTE, 2006 WL 287945 (E.D. Ark. Feb. 6, 2006) *aff'd*, 483 F.3d 561 (8th Cir. 2007) (also attached as Exhibit 1). In *Ruminer*, the plaintiff alleged that injuries he sustained when he struck a tree while driving his 2001 Chevrolet Suburban were a result of defects in the air bag and seat belt. *Ruminer v. Gen. Motors Corp.*, 483 F.3d 561, 562 (8th Cir. 2007). The plaintiff and his biomechanical expert Dr. Martha Bidez argued that the seat belt retractor experienced a late lock-up or a failure to lock and thereby failed to properly restrain the plaintiff. *Ruminer*, 2006 WL 287945 at *3. However, the plaintiff and his experts could not take the next step and articulate any specific design or manufacturing defect in the seat belt system that would have caused the retractor to fail. *Id.*

Judge Eisele determined that since Dr. Bidez could not identify a specific reason that the retractor had allegedly failed, Plaintiff had no direct proof of a specific defect in the restraint system. *Id.* He then described the general rule in Arkansas that a products liability plaintiff must offer proof of a specific defect:

> [P]roof of a defect is an essential element of a cause of action based on product liability. *Lakeview Country Club, Inc. v. Superior Products,* 325 Ark. 218, 223, 926 S.W.2d 428 (1996). Thus, while a plaintiff is relieved in a strict liability case of the necessity of proving fault or negligence, that plaintiff must still demonstrate that a defect existed and that it was present when the product left the hands of the manufacturer.
>
> Ordinarily, then, a plaintiff must identify and prove a specific defect in order to prevail. In limited instances, however, a plaintiff may be relieved of the burden of proving a specific defect, but only where "common experience teaches the accident would not have occurred in the absence of a defect." *Higgins v. General Motors Corp.,* 287 Ark. 390, 392, 699 S.W.2d 741 (1985).

*Ruminer*, 2006 WL 287945 at *8. The opinion goes on to determine that the plaintiff could not as a matter of law establish either sufficient proof of a specific defect or sufficient circumstantial evidence of the existence of a defect under the limited exception described in *Higgins*. *Ruminer*, 2006 WL 287945 at *9-11. The court thus found that the plaintiff's seat belt defect claims failed as a matter of law. *Id.* Notably, in an alternative holding, Judge Eisele excluded Dr. Bidez' testimony that the retractor failed due to a defect in the seat belt design or manufacture, because her opinion was not based on scientific knowledge or expertise and would not be helpful to the jury. *Id.* at 11-13. In this case, any claim by Plaintiff that the subject driver's seat belt system was defective should fail as a matter of law under the same style of analysis performed in *Ruminer*, and similarly Plaintiff's biomechanical expert Dr. Paver should be excluded from providing any testimony that the subject seat belt was defectively designed or manufactured.

## II. None of Plaintiff's Experts Can Offer a Direct Opinion that the Subject Seat Belt System was Defectively Designed or Manufactured.

Dr. Jacqueline Paver is Plaintiff's only designated expert regarding seat belt design defects. Plaintiff has designated three retained testifying experts—Dr. Jacqueline Paver, Dr. Stephen Batzer, and Mr. Robert Hooker.[2] Only Dr. Paver was designated to address allegations of seat belt design defects.[3] Additionally, at their depositions, Dr. Batzer and Mr. Hooker each deferred to Dr. Paver regarding any seat belt use or defect opinions.[4] Dr. Paver is thus Plaintiff's only potential witness to

---

[2] *See* Plaintiff's Designation of Expert Witnesses, attached as Exhibit 2.
[3] *See id.*
[4] *See* Batzer Depo., attached as Exhibit 3, at 18:25 – 20:20; Hooker Depo., attached as Exhibit 4, at 19:17 – 20:19, 57:7-11.

address Plaintiff's allegations that the driver's seat belt system in the subject Toyota 4Runner was defectively designed or manufactured.

Dr. Paver, though, should not be allowed to express any direct opinion that the subject vehicle contained any design or manufacturing defects. Dr. Paver expressly disclaimed any such opinions at her deposition in this case multiple times and testified, "I have no opinions in this case in regard to identifying the defects."[5] Dr. Paver additionally agreed that she is not an expert in the design or development of automotive products.[6] Dr. Paver's own expressed purpose in this case is to provide "a biomechanical analysis which involves identifying the fatal injuries, reviewing the facts of the case, inspecting the vehicle, rendering opinions about—to a certain extent, about the mechanisms of injury and then given the recon and the alternative designs that were proposed by others, to opine as to whether those alternative designs would have prevented or mitigated the fatal injuries."[7] Dr. Paver is not qualified to render and has testified under oath that she did not intend to render an opinion in this case identifying any defects in the subject vehicle. Accordingly, none of Plaintiff's experts should be allowed to express a direct opinion that the subject seat belt system was defective in any respect.

### III. Dr. Paver's Opinion that the Subject Seat Belt may Have Inadvertently Unlatched is Insufficient Evidence of a Specific Design or Manufacturing Defect.

While Dr. Paver disclaimed any opinions as to whether or not the seat belt system was defective, Dr. Paver has expressed opinions that the subject driver's seat belt is susceptible to inadvertent unlatchment and that Micah Weaver's seat belt may

---

[5] *See* Paver Depo., attached as Exhibit 5, at 50:7 – 51:17, 65:17 – 66:3.
[6] *See id.*
[7] *See id.* at 50:4-14.

have unlatched during the subject crash. These opinions, like Dr. Bidez' opinions in *Ruminer*, do not support a finding that the subject seat belt was defectively designed or manufactured.

Dr. Bidez, like Dr. Paver in this case, intended to testify that the plaintiff's injuries were consistent with belt use based on her biomechanical expertise—testimony which the court in *Ruminer* would have allowed. *Ruminer*, 2006 WL 287945 at *11. However, Dr. Bidez also intended to testify regarding her alleged seat belt defect theory—opining that the belt "appears to have experienced a late lock-up, if it locked at all," that "marks on the webbing indicate that spoolout occurred," and that this "demonstrates a clear case of retractor failure." *Id.* at *3. The *Ruminer* court noted that her testimony established at most that the plaintiff "was belted at impact, the seat belt system did not adequately restrain Plaintiff, and that consequently, Plaintiff was injured more severely than he otherwise would have been. The difficult and unresolved issue in this case is determining *why* the seat belt did not restrain Plaintiff." *Id.* at *3. Without the *why*, a plaintiff has evidence only of a result, possibly caused by an alleged defective condition without proof of a specific defect. Similarly here, Dr. Paver's opinion that the subject seat belt may have inadvertently unlatched during the subject crash completely fails to explain why it may have done so. The *why* is the critical portion of the analysis where a plaintiff would need to show how the product was defective. Without the *why*, a plaintiff could make out a defect claim by proving only that her tire suffered a blowout. The *Ruminer* court determined that these sorts of opinions were not helpful to the jury because they did not constitute evidence of a specific defect, and to the extent the plaintiff intended to use them circumstantially to show the existence of a defect they

were not based on any scientific expertise but were only an application of common sense.

Dr. Paver in this case wants to render an opinion that the subject seat belt buckle was "susceptible" to inadvertent unlatchment. But, seat belt buckles are designed to unlatch. Vehicle occupants have to be able to unlatch the buckles to exit the vehicle. One question that Dr. Paver is unable to answer is what constitutes a "susceptibility to inadvertent unlatchment." She has not articulated any standard, measurement, or other quantifiable definition by which someone could determine whether any particular seat belt system was susceptible to inadvertent unlatchment such that it constituted a defect which rendered it unreasonably dangerous. Such an opinion is founded on even less scientific or technical analysis than Dr. Bidez utilized in *Ruminer*, where her seat belt defect opinions were found to be unhelpful to the jury, unreliable, and not based on any special scientific or technical knowledge. Dr. Paver's opinions in this case that the subject seat belt was "susceptible" to inadvertent unlatchment should be excluded for the very same reasons.

**IV. Plaintiff Cannot Rely on Circumstantial Evidence of a Defect Because Plaintiff has not Negated Other Potential Causes of Alleged Seat Belt Unlatchment.**

As the *Ruminer* opinion set forth, the general rule in Arkansas requires proof of a specific defect in order for a plaintiff to prevail on a products liability claim. *See Ruminer*, 2006 WL 287945 at *8. Arkansas recognizes a limited exception to that requirement through a doctrine that permits an inference of a defect where "common experience tells us that the accident would not have occurred in the absence of a defect." *See Harrell Motors, Inc. v. Flanery*, 612 S.W.2d 727, 729 (Ark. 1981). In

*Ruminer*, though, Judge Eisele carefully clarified the boundaries of this exception:

> Before a plaintiff may be relieved of his burden to prove a specific defect, Arkansas law requires that he "must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Campbell Soup Co. v. Gates,* 319 Ark. 54, 59, 889 S.W.2d 750, 753 (1994); *Higgins, supra.* "The mere possibility" that a defect caused the injury is not enough, the evidence must be sufficient to permit the jury to conclude that it is more probable than not that a defect caused the injury. *Higgins,* 287 Ark. at 392, 699 S.W.2d 741

*Ruminer,* 2006 WL 287945 at *8. The *Ruminer* court determined that the plaintiff there had failed to negate other possible causes for the alleged product failure by completely failing to address potential causes for the alleged retractor failure such as vibration, overloading, corrosion, impacts by foreign objects, contamination, etc. *Id.* at *5, *9. Similarly, here, Plaintiff has failed to negate potential causes for the alleged inadvertent unlatchment—including many of those same factors, as well as a potential false latch scenario and, as described below, faulty installation of replacement seat belt components.

While the *Ruminer* court noted that a plaintiff attempting to utilize the *Higgins* circumstantial defect evidence exception need not *eliminate* all other possibilities and need not prove his case beyond a reasonable doubt, still "he must demonstrate that it is more likely true than not that the seatbelt's failure was due to a manufacturing or design defect and not the result of some post-manufacturing, post-delivery problem." *Id.* at *9. Here, Plaintiff has clearly failed to meet this burden. Dr. Paver, Plaintiff's only seat belt design defect expert witness, testified that even as to whether Micah Weaver was wearing his seat belt, "there's evidence that supports belt usage. To say definitive,

more probable than not, I don't believe that's present in this case, but, again, with the belt, you don't always get the belt marks that you would see in a frontal crash, in a rollover crash."[8] Plaintiff has also failed to even address any of the other potential causes, besides a design or manufacturing defect, for an alleged unlatchment of the driver's seat belt buckle.

Finally, the *Ruminer* court noted yet another key reason why the limited *Higgins* exception did not apply there and does not apply in this case: "the doctrine of permitting inference of a defect is intended for situations when common experience tells us that the accident would not have occurred in the absence of a defect. Common experience here would not permit a finding of a pre-delivery manufacturing or design defect because such matters are outside the realm of a juror's common experience." *Id.* at *10 (internal citations omitted). Defect questions regarding the technical details of seat belt system component design, whether related to alleged retractor failure or alleged seat belt buckle inadvertent unlatchment, are outside a juror's common experience and simply cannot be proven without direct testimony of a specific defect.

**V.     The Subject Seat Belt was a Replacement Part Installed After the Subject Vehicle Left Defendants' Control.**

Under Arkansas product liability law, one of the essential elements that Plaintiff must prove is that the product was *supplied by the defendant* in a defective condition which rendered it unreasonably dangerous. *See* Ark. Code Ann. § 4-86-102(a). A defendant cannot be held liable for post-delivery changes to the product at issue. Here, however, the evidence shows that the driver's seat belt in the subject 4Runner had been replaced since the time that the 4Runner was originally manufactured and purchased.

---

[8] See Paver Depo. (Exhibit 5) at 57:19 – 58:1.

Specifically, the 4Runner had been involved in a prior frontal collision with a bear when the 4Runner was owned by Sue Miller.[9]  Following that crash, both front seat belts were replaced.[10]  The driver's seat belt system currently in the vehicle is therefore not the driver's seat belt system that was supplied with the vehicle when the vehicle left Defendants' control.  Plaintiff cannot establish a crucial element of a claim that the 4Runner was defective due to any condition of the driver's seat belt system at the time of the crash.

Moreover, the replacement of the seat belt provides yet another strong reason that the limited exception allowing circumstantial evidence of defect cannot apply in this case.  The part replacement creates multiple new potential reasons for any alleged seat belt unlatchment beyond a defect which existed when the 4Runner was supplied by Defendants. For instance, the replacement parts may have been installed incorrectly or modified or altered during or prior to installation.  Plaintiff is unable to negate such other potential causes for his alleged seat belt unlatchment scenario.

## Conclusion

Plaintiff should not be allowed to put on any evidence, testimony or argument that the subject 2000 Toyota 4Runner's driver seat belt system was defective. Additionally, Dr. Paver should be excluded from expressing any opinion that the driver seat belt system was "susceptible to inadvertent unlatchment."  Plaintiff has no evidence of any specific defect in the seat belt system, and Plaintiff is unable to meet the Arkansas standard for prevailing under a circumstantial evidence theory of defect as a matter of law.  In addition, the driver seat belt system in the subject vehicle had been

---

[9] *See* Depo. of Sue Miller (attached as Exhibit 6), at 8:16 – 13:5.
[10] *See* Defendants' Trial Exhibit 1036 (attached as Exhibit 7), at 14 (insurance records from Farmers Insurance reflecting right front and left front seat belt and retractor replacements).

replaced after the vehicle left Defendants' control. Accordingly, any such evidence, testimony, or argument would be irrelevant to the issues in this case, unduly prejudicial, and confusing to the jury, and would constitute improper expert opinion testimony.

WHEREFORE, PREMISES CONSIDERED, Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. pray the Court sustain Defendants' objections to any of Plaintiffs' proffered evidence or testimony that the subject vehicle's seat belt system was defective; and for such other relief, both at law and in equity, to which Defendants may show themselves justly entitled.

RESPECTFULLY SUBMITTED,

*/S/ DAVID P. STONE*
**KURT C. KERN** (*admitted pro hac vice*)
Texas Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE** (*admitted pro hac vice*)
Texas Bar No. 19289060
David.Stone@bowmanandbrooke.com
**CRAIG D. DUPEN** (*admitted pro hac vice*)
Texas Bar No. 24065177
Craig.Dupen@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
Telephone: (972) 616-1700
Facsimile: (972) 616-1701

and

**EDWIN L. LOWTHER, JR.** (81107)
elowther@wlj.com
**WRIGHT, LINDSEY & JENNINGS LLP**
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442

**ATTORNEYS FOR TOYOTA MOTOR SALES, U.S.A., INC. and TOYOTA MOTOR CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 5th day of March, 2014.

*/S/ DAVID P. STONE*